IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK BRIEKER, | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION NO. 16-0137 |
| BARBEQUE INTEGRATED, INC.<br>A FICTITIOUS NAME t/a<br>SMOKEY BONES BAR & FIRE GRILL | : | |
| Defendant | : | |

**Henry S. Perkin, M.J.**                                                                                          August 8, 2017

## MEMORANDUM

This matter is before the Court on Defendant's, Barbeque Integrated Inc., t/a Smokey Bones Bar Fire & Grill, Motion for Summary Judgment, which motion was filed on June 30, 2017. Plaintiff's Response to Defendant's Motion for Summary Judgment was filed on July 21, 2017. Defendant's, Barbeque Integrated Inc., t/a Smokey Bones Bar Fire & Grill, Brief in Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment was filed with leave of Court on August 2, 2017. Oral argument on the record was held on August 4, 2017. Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

## Procedural History

Plaintiff Mark Brieker ("Brieker") initiated this matter by filing a Civil Action Complaint in the Berks County Court of Common Pleas against Defendant Barbeque Integrated, Inc. t/a Smokey Bones Bar & Fire Grill ("Smokey Bones"). This matter was subsequently removed to this Court by Smokey Bones.

Brieker alleges that on October 16, 2013, while he was working on a ladder as an independent contractor at the Smokey Bones restaurant, he was caused to slip and fall on a liquid substance, suffering physical injuries. Brieker avers that the dangerous condition was caused by the negligence and carelessness of Smokey Bones in that it failed to properly maintain its premises, warn Brieker, and/or inspect the area where he fell.

The parties engaged in discovery and this Court, by virtue of its June 6, 2017 Order, directed that all dispositive motions (including a separate, short and concise statement of material facts) be filed on or before July 7, 2017. Smokey Bones now moves this Court to grant summary judgment in its favor, and dismiss the Complaint. The motion for summary judgment is now ripe for disposition.

**Facts**

Based upon the record papers, exhibits, depositions, and the parties' statements of the facts,[1] the pertinent facts to this Court's determination are as follows:

Brieker is a citizen and resident of the Commonwealth of Pennsylvania. Smokey Bones is a Florida corporation, with its principal place of business in the State of Florida. At all times material to this matter, Smokey Bones operated a restaurant in Wyomissing, Berks County, Pennsylvania.

At the time of the alleged incident, Brieker was employed as a Service Technician for Ecolab, Inc., a job he had held since 2009. In connection with his job for Ecolab, Inc.,

---

[1] In conjunction with the filing of its motion for summary judgment on June 30, 2017, Smokey Bones set forth its statement of the case. See Dkt. No. 34. Brieker responded to the statement of the case on July 21, 2017 when he filed his response in opposition to the motion for summary judgment. See Dkt. No. 38. In so doing, Brieker admitted many of the facts submitted by Smokey Bones. The admitted facts are included within this Memorandum.

Brieker, as an independent contractor, serviced the ice machine in the kitchen at the Smokey Bones restaurant. He serviced the ice machine on two occasions, Friday, October 13, 2013 and Monday, October 16, 2013.

On Friday, October 13, 2013, Brieker serviced the ice machine and determined it needed a new part, which he ordered. On Monday, October 16, 2013, at approximately 10:00 a.m., Brieker returned to the Smokey Bones restaurant with the intention of installing the new part. On that morning, Brieker entered the kitchen through the rear door of the restaurant and was carrying a bag of tools. He met with the kitchen manager, Andrew Sandoe ("Sandoe"), and informed Sandoe that he was there to replace a part in the ice machine.

Sandoe testified, that between approximately 9:30 a.m. and 9:45 a.m., after he had completed some of his initial duties in his office, he went to the kitchen and observed that there was water and ice on the floor in front of the ice machine. Because the employees on his team would be arriving to the restaurant around 10:00 a.m., Sandoe testified that he "absolutely squeegeed and broomed all of the ice off the floor as to ensure there were no issues and did squeegee and broom all that onto the grate" in front of the ice machine. Sometime after Sandoe cleared the water and ice off the floor, Brieker rang the doorbell at the rear of the restaurant, and Sandoe led him into the kitchen area. When asked what was said between the two of them, Sandoe testified that it was "along [] the lines, oh, hey you're here to fix the ice machine, great, I mean, along the lines if you need anything, please let me know." After that brief conversation, Sandoe assumed Brieker would "be going to the ice machine, as [] discussed, to repair the ice machine. And then [Sandoe] went through to open the rest of the building to make sure drawers were situated." After he left the area where the ice machine was located, Sandoe went into the

3

bar area and began putting the cash drawers out for the bartenders.

According to Brieker, as soon as he looked at the ice machine, he noticed there was ice and water on the floor in front of the machine. Brieker testified that Sandoe told him he had done his best to get the ice and water off the floor. After accessing the ice machine and observing the condition of the floor, Brieker placed his tool bag down, and then exited the restaurant and went to his truck to retrieve a six- foot step ladder. Brieker got the ladder and, once again, entered the Smokey Bones restaurant through the back door. According to his testimony, Brieker observed that there was still water and ice on the floor, although some of the ice had begun to melt. He did not attempt to remove the ice and water from the floor. Instead, Brieker cleared some of the ice away with his boot and placed his ladder in front of the ice machine, on the ice and water-covered floor.

Brieker testified that before climbing the ladder, he did not ask Sandoe to clean the floor better than it was because "it wasn't [his] responsibility to ask [Sandoe] again to clean it." Likewise, Brieker did not ask Sandoe for permission to clean up the floor to make it safe for him to put his ladder on the floor. Prior to climbing his ladder, Brieker felt that the work zone could have been safer, as there was still ice and water on the floor, but it was "not [his] job to clean the floor." Brieker testified he did not carry towels in his truck, and he did not ask anyone at Smokey Bones if it had towels, nor did he look for them. Brieker further testified that he did not consider calling his supervisor to tell her that the environment may not be the most safe place for him to work, as he was more focused on getting the ice machine fixed.

Brieker does not recall if he stepped on ice immediately before he began to climb the ladder; when he began to climb his ladder, his focus was on repairing the ice machine. When

Brieker was climbing his ladder, it shifted on the ice causing him to lose his balance, and he allegedly began coming back down the ladder. As he did so, his left foot stepped on ice on the floor, causing him to fall backwards, with his back striking the wall and his head striking a doorframe. There were no witnesses to the subject incident.

According to Brieker, Ecolab was very strict with safety and training. With regard to ladder training, although he recalled being trained to set a ladder up correctly, he did not recall training on whether and/or how to place ladders on ice or wet surfaces.

## Standard of Review

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must cite "to particular parts of materials in the record" showing that there is

5

a genuine dispute for trial. Fed. R. Civ. P. 56(c). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim. Celotex, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

**Discussion**

Brieker asserts a claim of negligence against Smokey Bones. As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000). Under Pennsylvania law, "[a] plaintiff must prove four elements to establish negligence by a defendant: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir.2005) (applying Pennsylvania law); Toro v. Fitness International LLC, 150 A.3d 968, 976-977 (Pa. Super. 2016). "Whether a defendant owes a duty to a plaintiff is a question of law." In re TMI, 67 F.3d 1103, 1117 (3d

6

Cir.1995) (citations omitted).

## Duty to Employee of Independent Contractor

Smokey Bones avers that no duty of care is owed to Brieker because he is an employee of an independent contractor. We note initially that there is no question that Brieker was an employee of Ecolab, Inc. at the time of the incident, and that Ecolab, Inc. was an independent contractor hired by Smokey Bones.

As noted by the Honorable Eduardo C. Robreno in the case of Warnick v. Home Depot, U.S.A., Inc.,

> Pennsylvania law imposes no general duty on property owners to prepare and maintain a safe building for the benefit of a contractor's employees who are working on that building. Rather, our law generally insulates property owners from liability for the negligence of independent contractors and places responsibility for the protection of the contractor's employees on the contractor and the employees themselves.

Warnick, 516 F.Supp.2d 459, 466 (E.D. Pa.2007) (quoting Gutteridge v. A.P. Green Serv. Inc., 804 A.2d 643, 656 (Pa. Super. 2002)). In addition,

> [a]n owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor.

Warnick, 516 F.Supp.2d at 467 (quoting Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 189 A.2d 271, 277 (1963)).

There are two exceptions to the general rule that a hiring party is not liable for the injuries of an independent contractor's employees. The first exception is for "retained control": the hiring party owes a duty to the contractor's employees if the hiring party retains control over

the means and methods of the contractor's work. Warnick, 516 F.Supp.2d at 466 (citing Restatement (Second) of Torts § 414 (Negligence in Exercising Control Retained By Employer)). The second exception is for "peculiar risks": a hiring party owes a duty to the contractor's employees if the work being performed poses a special danger or is particularly risky. Warnick, 516 F.Supp.2d at 466 (citing Restatement (Second) of Torts § 416 (Work Dangerous in the Absence of Special Precautions) and § 427 (Negligence as to Danger Inherent in the Work)). Brieker has already conceded in his responsive brief that the peculiar risk exception does not apply to this case because the existence of water and ice on the floor in front of the ice machine is not a peculiar risk of harm within the meaning of the Restatement of Torts.

Brieker seeks to avail himself of the retained control exception, averring that Smokey Bones did retain control over the area where he was working. Specifically, Brieker asserts that Sandoe testified that he attempted to remove ice and water from in front of the ice machine, and the efforts of Sandoe in attempting to clear the condition presents a factual question as to whether or not Smokey Bones retained control over the area in question, making summary judgment inappropriate. We disagree.

With respect to the retained control exception, courts in this District have noted that

> [i]n order for [this exception] to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is

> controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Davis v. Lowe's Home Centers, Inc., No. 09-5367, 2011 WL 3862192, at *3 (E.D. Pa. Sept. 1, 2011) (Hey, M.J.) (citing Warnick, 516 F.Supp.2d at 467 (citing Restatement (Second) of Torts § 414, cmt. c).

As further noted by my colleague, the Honorable Elizabeth T. Hey in Davis,

> Pennsylvania courts have construed this exception very narrowly, finding that frequent visits to the job site by the owner, *see Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271, 278 (Pa.1963), the hiring of a site manager by the owner, *see Emery v. Leavesly McCollum*, 725 A.2d 807, 813–14 (Pa.Super.1999), the owner's requiring the contractors employees to watch a safety video, *see Farabaugh v. Pa. Turnpike Comm'n*, 911 A.2d 1164, 1275 (Pa.2006), and even the owner's directing a discrete activity with respect to the work were not enough to invoke the retained control exception. *See LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1062 (Pa.Commw.Ct.2005). Applying these cases, the Honorable Eduardo Robreno concluded that the owner's manager instructing a contractor's employees to stop engaging in what he considered unsafe practices was not sufficient to invoke the retained control exception. *See Warnick*, 516 F.Supp.2d at 469.

Davis, 2011 WL 3862192, at *3; see also Warnick, 516 F.Supp.2d at 468 (opining that a "long line of Pennsylvania cases has construed this exception narrowly, almost always finding that the hiring party did not exercise sufficient control over the contractor to impose liability on the hiring party for the contractor's employee's injury.").

As noted by Smokey Bones, the most recent opinion from the Pennsylvania Supreme Court on the issue of the retained control exception is Beil v. Telesis Construction, Inc., 11 A.3d 456 (Pa. 2011). In Beil, the plaintiff was an employee of a roofing subcontractor who

fell from a scaffold that had been erected by a masonry subcontractor. Id. at 456. Plaintiff initiated a personal injury action against the property owner, Lafayette College; the construction manager; and the masonry subcontractor. Id. Although the plaintiff in Beil asserted that the "retained control" exception should apply to Lafayette College as the property owner, the Supreme Court of Pennsylvania stated that an owner who retained control over safety and worksite access did not automatically fall within the purview of the "retained control" exception to the general rule, and that the onsite daily presence of an owner's employee does not necessarily impose liability, if no control is asserted by the owner over the means and methods of the contractor's work. Id. at 467. The Beil Court went on to state that "a property owner retaining a certain degree of authority over safety issues, such as supervising and enforcing safety requirements, and even imposing its own safety requirements at a worksite, did not constitute control for purposes of imposing liability." Id. at 469.

Judged by the foregoing cases, it cannot be said that Brieker has made a sufficient showing to overcome the century-old Pennsylvania rule that a landowner is not liable for the allegedly negligent acts of an independent contractor on its property. At the outset, it is clear that Brieker cannot identify any "contractual provisions giving the premises owner control over the manner, method, and operative details of the work." Beil, 11 A.3d at 467. Nor has Brieker "demonstrate[d] that the land owner exercised actual control over the work." Id. In this case, the undisputed facts demonstrate, that Smokey Bones did not retain any control over Brieker's work. Brieker, as an employee of the independent contractor, decided what needed to be repaired on the ice machine, and how to go about repairing it.

10

Further, this Court concludes that the testimony of Sandoe does not establish that Smokey Bones retained control of the work that Brieker was performing. In order to establish that Smokey Bones owed him a duty of care, Brieker must show that Smokey Bones retained control over the manner, method, and operative details of his work. Brieker is unable to do so. In fact, the testimony demonstrates that after he allowed Brieker into the restaurant, Sandoe left the area of the ice machine, and attended to his own responsibilities, i.e. opening the rest of the building, and making sure the cash drawers were situated in the bar area. Moreover, with respect to Sandoe's testimony that he cleared the water and ice from the front of the ice machine, it appears to this Court that this was not done out of anticipation of Brieker's arrival, but was actually done in anticipation of the arrival of his team members so that they could walk safely in the kitchen.

The facts presented here are not sufficient to invoke the retained control exception. Although Sandoe may have performed some cleaning of the ice and water in front of the ice machine prior to Brieker's arrival, Smokey Bones did not assert any control over the means and methods of Brieker's work in repairing the ice machine. Upon his arrival to the restaurant, Brieker noticed there was ice and water on the floor in front of the ice machine. He did not attempt to remove the ice and water from the floor, nor did he request any assistance from anyone at Smokey Bones with respect to removal of the ice and water. Instead, Brieker cleared some of the ice away with his boot and placed his ladder in front of the ice machine, on the ice and water-covered floor. Under these circumstances, and guided by the reasoned decisions of my colleagues, and by Pennsylvania caselaw in this area, we conclude that the retained control exception does not apply to this matter.

Accordingly, this Court will grant Smokey Bones's motion for summary judgment on the basis that it did not owe a duty of care to Brieker, as an employee of an independent contractor.[2] See Celotex, 477 U.S. 323 ("The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.") (quoting Fed. R. Civ. P. 56(c)).

## Conclusion

Defendant's, Barbeque Integrated Inc., t/a Smokey Bones Bar Fire & Grill, Motion for Summary Judgment will be granted. An Order follows.

---

[2] Because we have concluded that the evidence establishes that Smokey Bones owed no duty to Brieker as the employee of an independent contractor, it is not necessary for this Court to address the other theories advance by Smokey Bones in support of its motion for summary judgment.